## MATTER OF HALL

### In Deportation Proceedings

### A-22103583

*Decided by Board February 4, 1982*

(1) The respondent, who engages in fund-raising activities as part of his missionary work for the Unification Church, is employed within the contemplation of section 245(c)(2) of the Immigration and Nationality Act, 8 U.S.C. 1255(c)(2), and, therefore, his employment without the permission of the Immigration and Naturalization Service bars him from adjusting his status in the United States to that of a lawful permanent resident.

(2) Where the respondent receives full support in return for his missionary duties, he is not an unpaid volunteer in the service of the Church even though he receives no fixed salary or remuneration in an amount proportional to his success in his work.

(3) In the absence of a clear expression of legislative intent, the Board will not conclude that detriment to the American labor force was Congress' sole or even primary concern in enacting section 245(c)(2) of the Act; however, where the respondent's activities as a fund-raiser could successfully be performed by persons or business enterprises outside the Church and involve the sale of goods, an entrepreneurial undertaking which places the Church in competition with other sellers of such goods, it may not be said that those activities are without adverse impact on the United States labor market.

(4) In considering the applicability of section 245(c)(2) of the Act, the Government does not improperly dictate to the Unification Church the permissible scope of its missionaries' duties by isolating the respondent's fund-raising activities from his purely ministerial duties; determining the status or duties of an individual within a religious organization is a distinct question from determining whether that individual qualifies for status or benefits under our immigration laws and authority over the latter determination lies not with any ecclesiastical body but with the secular authorities of the United States.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
David Carliner, Esquire
#931 Investment Building
1511 K Street, N.W.
Washington, D.C. 20005

ON BEHALF OF SERVICE:
Gerald S. Hurwitz
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Maguire, Morris, and Vacca, Board Members

At a deportation hearing conducted on December 19, 1978, an immigration judge found the respondent deportable as an overstayed nonim-

migrant pursuant to section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2), and statutorily ineligible for adjustment of status under section 245 of the Act, 8 U.S.C. 1255, by reason of the unauthorized employment bar of section 245(c)(2), 8 U.S.C. 1255(c)(2), but granted him the privilege of voluntary departure in lieu of deportation. The respondent concedes deportability but contests the denial of section 245 relief.

At the conclusion of the deportation hearing, as the immigration judge was stating his decision, the respondent through counsel made an oral motion to reopen the proceedings to permit further development of the record with respect to his eligibility for adjustment of status. The immigration judge declared the hearing closed and refused to entertain the respondent's motion to reopen.[1] Subsequent to the hearing, on December 26, 1978, the respondent submitted a formal, written motion to reopen which the immigration judge denied in a decision dated February 14, 1979. The respondent appealed from that decision and oral argument in the case was heard by the Board on May 1, 1980.

In seeking to reopen deportation proceedings, it is incumbent upon the alien to make a prima facie showing of eligibility for the relief sought. *Matter of Rodriguez*, 17 I&N Dec. 105 (BIA 1979). The respondent has not sustained his burden. Upon careful consideration of the arguments advanced by the respondent since the hearing, we are satisfied that section 245(c)(2) operates to bar adjustment in his case. As no purpose would be served by reopening, the respondent's appeal from the denial of his motion to reopen will be dismissed.

The record reflects that the respondent, a 36-year-old single male, a native and citizen of Guyana, entered the United States at New York in May 1976 upon presentation of a nonimmigrant visitor visa. He came to the United States for the purpose of attending a rally sponsored by the Unification Church at Yankee Stadium. In July 1976, the respondent departed New York for Puerto Rico to "work . . . as a missionary" for the Unification Church (Tr. p. 9), a pursuit in which he is apparently still engaged.

According to the respondent, his duties as a missionary consist of holding and attending seminars, witnessing, visiting houses and teaching people on the street the word of God, distributing literature, helping

---

[1] Prior to the deportation hearing, the District Director had denied the respondent's application for adjustment of status on a ground other than that cited by the immigration judge, *i.e.*, section 212(a)(15) of the Act, 8 U.S.C. 1182(a)(15). The respondent contends that the Service did not raise the unauthorized employment bar of section 245(c)(2) as a possible basis for denial when he renewed his application at the hearing and that he was therefore denied an opportunity to show that the bar did not apply in his case. Despite this objection, the immigration judge ruled that the respondent had had adequate opportunity to demonstrate eligibility for the relief sought.

people financially under Church auspices, and visiting churches. Those duties also include selling toys, jewelry and trinkets as a means of raising funds for the Church. The respondent, estimates that he spends from one-third to one-half of his time fund-raising.

The respondent testified that the proceeds of his fund-raising efforts are turned over to the Director of the Church in Puerto Rico with whom he shares a rented house. In return, the respondent receives full support from the Church which includes housing, food, clothing, medical expenses, transportation, entertainment, toiletries, and other personal expenses. In addition, the respondent is given approximately $25 in cash each month for "walking around" money, enough to ensure that he has $10 in pocket money at all times.

The unauthorized employment bar of section 245(c)(2), added by the 1976 Amendments to the Act,[2] renders ineligible for adjustment of status aliens (other than immediate relatives) who, after the effective date of the bar, continued in or accepted authorized employment prior to filing an adjustment application. The respondent continued his activities on behalf of the Unification Church, which he does not contend were authorized by the Service, after the January 1, 1977, effective date of the bar. His adjustment application, based upon his status as the beneficiary of an approved second-preference visa petition submitted by his lawful permanent resident mother, was not filed until May 1977. The dispositive question, then, is whether those activities constitute "employment" within the contemplation of section 245(c)(2). The immigration judge answered that question in the affirmative, concluding that the respondent was employed as a fund-raiser for the Church.

The respondent contends that the activities in question may not properly be characterized as employment so as to bar him from the benefits of section 245. He describes his position with the Church as an unpaid volunteer, not an employee, arguing that he labors for no salary. He submits that his service as a missionary is not the type of pursuit Congress contemplated in enacting section 245(c)(2). Finally, the respondent argues that his fund-raising efforts and his teaching, proselytizing, and other religious duties are integral, indivisible parts of his missionary work and that it is not within the province of the Immigration and Naturalization Service or the immigration judge to determine what constitutes missionary work for any particular church.

The respondent's contention that he is an unpaid volunteer in the service of the Church is not persuasive. He clearly receives compensation in return for his efforts on behalf of the Church. By his own account, he is provided the wherewithal to cover both necessary and nonessential

---

[2] 1976 Amendments to the Immigration and Nationality Act, Pub. L. 94-571, 90 Stat. 2703 (effective January 1, 1977).

expenses, such as entertainment and recreation. He is, in addition, given discretionary funds as needed. The respondent's relationship with the Church in effect guarantees him a standard of living similar to that of many moderate-income wage earners. The fact that he receives no fixed salary or remuneration in an amount proportional to his success as a fund-raiser is, in our view, immaterial.

The respondent insists that his work on behalf of the Unification Church is not the sort of undertaking Congress intended to discourage with the imposition of the unauthorized employment bar inasmuch as his activities have no adverse impact on the United States labor force. As the respondent acknowledges, however, the legislative history of section 245(c)(2) provides little guidance as to the specific end or ends sought to be served by the bar. Congress' sole statement of purpose, contained in the House Judiciary Committee report to the 1976 Amendments,[3] reads as follows:

> . . . [under the proposed legislation,] aliens who are not defined as immediate relatives and who accept unauthorized employment prior to filing their adjustment application would be ineligible for adjustment of status. *The Committee believes that this provision would deter many nonimmigrants from violating the conditions of their admission by obtaining unauthorized employment.* Similar provisions were included in legislation which passed by the House of Representatives during the 92d and 93rd Congresses. (Emphasis added.)

Concern over the impact of a nonimmigrant's unauthorized employment upon the American labor force may well have been a motivating factor underlying the enactment of section 245(c)(2). However, Congress did not so indicate, either indirectly in the legislative history of the proposal ultimately enacted or directly in the express language of the statute.[4] Absent a clear expression of legislative intent, we are unwilling to conclude that detriment to American labor was Congress' sole or, for that matter, primary concern.

Manifest in the report language quoted above is Congress' substantial interest — apart from its arguable interest in protecting the domestic labor market — in the enforcement of our immigration laws with respect to nonimmigrant aliens within our borders. *Cf. Matter of Yazdani,* 17 I&N Dec. 626 (BIA 1981).[5] Correlatively, by penalizing nonimmi-

---

[3] H.R. Rep. No. 94-1553, 94th Cong. 2d Sess. (September 15, 1976), reprinted in 1976 U.S. Code Cong. & Ad. News 6073, 6084.

[4] Congress could have, but did not, exempt from the bar nonimmigrants engaged in employment determined to be of benefit to the United States. *Cf. Matter of Raol,* 16 I&N Dec. 466 (BIA 1978). Our reluctance to read a limitation into the statute not placed there by Congress is bolstered by the fact that an alien within the ambit of section 245(c)(2) is deprived of no ultimate right under the immigration laws since he remains free to apply to a United States consul abroad for an immigrant visa.

[5] Pursuant to those immigration laws, a nonimmigrant is forbidden to work in this country unless he has been accorded a nonimmigrant classification which authorizes employ-

grants who work in violation of the terms of their admission, Congress may well have sought to discourage aliens admitted to the United States for a temporary purpose from acquiring a source of funds to support a prolonged unlawful stay in this country.

In any event, we are not persuaded that the respondent's activities as a fund-raiser are without adverse impact on the United States labor market. Unlike the purely ministerial duties carried on by the respondent, we consider the raising of funds a secular function which could successfully be performed by persons or business enterprises outside the Church. We note, moreover, that the respondent does not merely solicit donations in the name of the Unification Church but engages in the sale of goods, an entrepreneurial undertaking which places the Church in competition with other sellers of such goods.

Under the circumstances here presented, were the institution or organization for which the respondent performs his fund-raising services not a church, we would have no difficulty in finding the section 245(c)(2) bar applicable. We find no basis in the language or history of the statute for carving out an exception to the bar in the case of a church, at least with respect to the secular activities of its adherents.

We reject the respondent's suggestion that the Government, by isolating his fund-raising activities, improperly seeks to dictate to the Unification Church the permissible scope of its missionaries' duties. Determining the status or the duties of an individual within a religious organization is one thing; determining whether that individual qualifies for status or benefits under our immigration laws is another. Authority over the latter determination lies not with the Unification Church or any other ecclesiastical body but with the secular authorities of the United States. *See Matter of Rhee*, 16 I&N Dec. 607 (BIA 1978).

In sum, we conclude that the respondent, through his fundraising activities, engaged in employment without Service permission in contravention of section 245(c)(2) and consequently is not eligible to adjust his status in this country to that of a lawful permanent resident. His motion to reopen the proceedings to permit consideration of his application for adjustment of status under section 245 was, therefore, properly denied. The appeal will be dismissed.

ORDER: The appeal is dismissed.

---

ment or has been granted specific work authorization from the Service; a nonimmigrant who is permitted to work may engage only in such employment as has been authorized. 8 C.F.R. 214.1(e); 8 C.F.R.109.1(a).